Judge Marshall
delivered the Opinion of the Court.
This was an action of assumpsit brought by Baird, Miller & Baldwin against-Matthews, to recover damages for the breach of an alleged warranty in the sale of six hundred and sixteen barrels of flour, as 4 superfine flour,’ when, in fact, it consisted entirely of ‘ fine flour,’ and ‘ common flour.’
The case was twice tried in the Circuit Court, on the general issue. On the first trial,- .the jury found a ver *130 diet of four hundred and fifty dollars for the plaintiffs. And a new trial having been granted, on motion of the defendant, the plaintiffs excepted, and the evidence then given, together with the instructions of the Court to the jury, is spread on the record.
The evidence.
At a subsequent term, the plaintiffs having introduced precisely the same evidence, the defendant’s motion to instruct, as in case of a non-suit, was sustained by the Court, and the jury found a verdict for the defendant. The motion of the plaintiffs for a new trial having been overruled, they again excepted, and have brought the case to this Court by appeal.
The first question to be determined, is, whether the Court erred in granting the new trial .after the first verdict. And as the evidence, in relation to the actual quality or kind of flour delivered, and the difference in value of the several sorts, was clearly sufficient to authorize the verdict for four hundred and fifty dollars, if the alleged warranty or undertaking was sufficiently proved — the testimony will be stated, and considered exclusively with a view to its bearing on this point.
The declaration alleges, in substance, that the defendant offered to sell six hundred and sixteen barrels of superfine flour; and, in consideration of two thousand nine hundred and twenty six dollars paid to him therefor, sold them to the plaintiffs, and undertook and faithfully promised that they were all of the superfine quality.
In support of this averment, they read in evidence the following receipt: “Louisville, 17 Jan’y, 1832. Rec’d from Baird, Miller & Baldwin twenty nine hundred and twenty six dollars in full for 616 barrels superfine flour, óf R. & A. Woods’ brand of Wheeling. James Matthew's.” Also, two bills of lading of the same date, stating the shipment, by them, of the flour on board of two steamboats, to be delivered to one of their firm in New Orleans. They then introduced evidence conducing to show, that, both at Louisville and at New Orleans, there was a well known and established difference between ‘ superfine,’ ‘ fine,’ and ‘ common ’ flour, and a uniform difference in the price of the average qualities of these different denominations, and that the price of superfine *131 flour in Louisville, at the date of this sale, was four dol•lars seventy five cents per barrel, which was the price paid in this case. '
A written warranty of soundness, though not sealed, is a covenant, (by statute,) having the same force and effect as if sealed. But-
Words which are used merely to describe an article of merchandise in a bill of sale for the price — as received. &c. so much, for so many barrels of superfine flour' do not constitute nor imply, any warranty of the quality or grade. They constitute a mere representation from which the law implies no promise, and for the falsltJ of which, maintained. The article sold is presumed, (the contrary not appearing) to be present, and inspected by the buyer,who, without trusting to what the seller may say, judges of it for himself. But—
*131 It was proved, on the part of the defendant,, that the flour was put on board a steamboat on the upper part of the Ohio river, and delivered to the defendant, to be taken to Louisville, and sold for Woods & Co.; and that it was usual, in the city of Louisville, to sell flour by the Louisville inspection, and not usual to sell warranting it to stand the New Orleans inspection. The flour, in. this case, was inspected, not at Louisville, but at New-Orleans. There is no direct evidence of what passed, between the vendor and vendees before'or at the time-of sale. Nor does it appears what became of the flour after it was inspected at New Orleans, for one of thevendees. There is not only no proof of actual fraud in-the defendant, but the charge is disavowed.
It is contended on the part of the appellants, that the-receipt itself is either an express warranty or equivalent to an express warranty; and further that a warranty of the quality of the article sold, is not such a stipulation,, as under the act of 1812, would elevate the writing to-the dignity of a sealed instrument. It has, however,been repeatedly decided by this Court that a written-warranty of soundness, though not under seal, is a covenant, and therefore placed by the statute on the footing of a sealed instrument. Hancock vs. Shipp, 4 J. J. Marsh. 440; Ditto vs. Helm,, 2 J. J. Marsh. 129, &c. &c.And although we can well conceive that a writing may recite a stipulation or covenant as having been previously made, without being itself a covenant, or containing any -stipulation (as was said in the case of Kibby vs. Chitwood’s heirs, 4 Mon. 93,) yet we could not admit that this receipt is an express warranty, without also- deciding, that it is a covenant — the-, production of which should have defeated the action in its present format we think it very clear that it is not, m itself, a warranty or covenant. It contains no stipulation, promise or agreement. It acknowledges the receipt of money, and for what it was paid; and, in doing this, it furnishes , r 7 7 o ? evidence ox a contract of sale, of the article sold, and of *132 the price paid. It proves, by its descriptive terms, and by the price stated, as compared with other evidence, that the article was sold as superfine flour, and doubtless authorizes the inference that it was represented or affirmed to be such, before and at the time of sale. But unless the sale of the flour as superfine, or the representation, at the time of the sale, that it was- superfine, constitutes or necessarily implies a warranty that it is so, neither the receipt, taken alone, nor in connection with the other evidence as to price, proves a warranty. And certainly if it is not in itself a warranty, and does not prove one, it cannot be equivalent to one.
In land contracts, false representations by the vendor, are frequently made grounds of rescission, or for a reduction of price, especially when the purchaser had no opportunity of viewing the premises.
In the case of Carstarphen vs. Graves, 1 Marshall, 435, it was contended by the counsel that, “ as Carstarphen was charged in the declaration with having represented the negro, at the time of the sale, as being sound, the law implies a promise;” but the Court did not admit the doctrine to be correct, and went on to say: “It has been repeatedly held by this Court, and no doubt in strict accordance with the principles of the common law, that upon the sale of a chattel, the law implies no promise of its soundness.” Many other cases might be cited to shew that the doctrine has been maintained, with little variation in this State, that for a misrepresentation of the quality of a chattel sold, the vendor cannot be made responsible unless he knew his representation to be false, which excludes the idea that any such representation is a warranty, or is equivalent to one, or can in itself furnish evidence of a warranty. Smith, for Norton, vs. Miller, 2 Bibb, 648; Jones vs. Murray, 3 Mon. 85-6; Massie vs. Crawford, 3 Mon. 218-20.
In contracts for land, and especially when the contract is executory, a material misrepresentation is more seriously regarded, and is often made the ground of a rescission of the contract, or of a deduction from the price. In such contracts, too, the fact that the vendee has not seen the land, and has had no opportunity of seeing it, is regarded as adding to the consequence of the vendor’s representations. The decisions above referred to, which in case of. the sale of a chattel, deny ' any effect to a mere misrepresentation not known at the *133 time to be false, relate to executed contracts, and seem to imply that the thing sold may have been present and subject to inspection. In such a case, the maxim caveat emptor applies. And the law, Requiring every man to exercise a reasonable vigilance in guarding his own interest, will not presume that a mere representation by the vendor has been implicitly relied on by the other party, and that the responsibility of the vendor for its truth, enters into and forms a part of the consideration of the contract of sale, when there is an opportunity of bringing the fact at once to the test of observation or experiment. And many vexations and annoyances are prevented by this principle.
Where a sale of a chattel or comino dity is by ex-ecutory contract —the delivery to be at a future time; or where the situation of the thing sold is such that, the purchaser cannot inspect it, the seller s description enters into, and forms an essential part of, the contract of sale; and if the chattel or commodity, when produced, differs from the description given, so far a3 not to be salable under the denomination given to it, the seller is liable for damages for a breach of his contract.
But there is an obvious distinction between, such a case, and an executory contract for the sale of a chattel, or a contract of sale not executory in form, but which, on account of the absence of the article sold, and its being not immediately accessible, leaves the actual delivery still to be made. In such a case, the article itself not being present, or subject to inspection, the sale is necessarily made by a description, more or less minute,' to be furnished on the part of the vendor. If the vendee be previously acquainted with the individual article, nothing more than an identification of that article may be included in the description, or in the terms of the contract. But if he be not acquainted with it, and there be no opportunity of inspection, a description more extensive and specific would.probably be required. In all cases where the sale, whether wholly executory or only so in respect of the actual delivery of the article, must necessarily be by description, the description itself, whether parol or written, must, from the nature of the transaction, be, to a reasonable extent, obligatory upon the party making it, and enter into the contract as an essential term of the sale. In other words, there must, in such cases, be a substantial conformity between the article delivered, and the description by which it is sold, or the vendor will have broken, not merely his word, but his contract.
This principle, which seems to be essential to the preservation of the just rights of the parties, while it *134 does not bring them to a test either too rigid or too elevated for the multifarious transactions of a commercial community, is not in violation of the train of decisions in this Court, to which we have referred, as understood by us, and is supported by analogy to the principles applicable to contracts for the sale of land under similar circumstances. Indeed, where a vendor, in a case such as has been just supposed, brings his action for the nonacceptance of the article, and the non-payment of the price, the necessity of his shewing the substantial conformity, or the right of the vendee to shew the non-conformity of the article furnished with the description by which it. was sold, is too palpable to be questioned, and has often been practically acknowledged. ■ But this can only be because the description, under the circumstances stated, is understood to be a part of his contract, by which he is bound, and to the performance of which the vendee has a right to hold him bound. And being a part of the contract, the right of the vendee to sue for a breach of it, unless waived .by some act of his own,, seems to be a certain and necessary consequence.
What particular acts, before or after a breach of this contract, may be necessary to save the right of action, or will operate to destroy it, is not now the subject of enquiry, but rather what particular circumstances must concur to ipake the description of the articles sold a part of the contract — which is in effect to make it a warranty — and whether those circumstances were sufficiently proved in this case. With regard to the nature of the circumstances which must concur, and their effect, we cannot better illustrate what seems to us to be the true doctrine on the subject, than by quoting a passage from the remarks of Lord Ellenborough, in a case in which there had been a sale of a certain quantity of “waste silk,” then on its passage from the continent; and it was proved that, when it reached the plaintiff, it was not of a quality saleable under the denomination of waste silk. Lord Ellenborough said, “ I am of opinion that, under such circumstances, the purchaser 'has a right to expect a saleable article, answering the descrip, tion in the contract. Without a particular warranty, *135 this is an implied term in every such contract. Where there is no opportunity to inspect the commodity, the maxim of caveat emptor does not apply. He cannot, without a warranty, insist that it shall be of a particular quality or fineness, but it shall be considered that both parties intended that it should be saleable in the market, under the denomination mentioned in the contract between them.” 4 Camp. 144.
A - quantity of flour was received at Lousville- all by one steam boat; there sold superfine, ’ described in it for the The purchases in one boat part in one New Orleans where it to be of an inferior description, viz: ‘fine and common. ’ the receipt and the bills of lading taken by the purchasers, bore the same dates, and there was no other evidence of what passed at the sale, nor as to the opportunity of the purchasers to inspect th'e article. Held, that these facts do not show an express warranty, nor anything fl-om which a warranty can be implied;nor that, when the sale was made, there was such a want of opportunity for the purchasers to inspect the article, as to make the vendor liable for misrepresentation. '
We have already stated that, in this case, the evidence was sufficient to prove that the flour was sold as ‘superfine flour;’ and to determine ' whether the vendor shall be understood to have warranted it saleable quality under that denomination, necessary to enquire whether the proof sho izes the inference, that there was in fact of inspecting it. Certainly there is no this. And the only fact referred to in sufficient to authorize the inference, is the of the dates of the receipt for the, price, and bills of lading. It is argued that this coincidence authorizes the inference, that the flour was in the holds of the boats when the sale took place, and therefore, not accessible for inspection.
It is to be recollected that, on the first trial, the defendant proved, that the flour was put on board a single steam boat, to be taken to Louisville, and the bills of Jading produced by the plaintiffs, state that it was there shipped by them in two boats. It is impossible to infer from these facts, and from the date of the receipt, even admitting that it proves the sale to have taken place on the same day, that the flour remained in the hold of one or more steam boats from its arrival at Louisville to the time of the sale, or of its departure from that port. The iiiference rather is, that it was transferred, in part at least, from one boat to another.. And if the bills of lading speak the truth, they show that it was put on board by the plaintiffs themselves — for such is the literal import of their statement — and this on the same day that the receipt bears date. And the inference would seem to be that it might, Avithout difficulty or inconvenience, have been inspected on that day.
That there was a warranty of quality or grade, in asale of flour, cannot be inferred from a custom at the place of sale, of selling by the inspection there.— The custom may explain the warranty, but cannot show that there was a warranty.
But, if it could be rationally inferred that the flour remained in a boat or boats, at the wharf at Louisville, during the pendency of the negotiation for the sale, and until the payment of the purchase money, we could not admit that it was to be thence inferred, that there was no opportunity for inspecting it, or that the duty of doing so, was so 'far dispensed with, as that the vendor’s representation that the article was ‘superfine flour,’ shall be considered as a warranty or contract that it was so. Nor can we admit that the want of opportunity to inspect is sufficiently proved by merely laying the foundation for the possible inference, that circumstances may have been such as to preclude the opportunity of inspection. If the want of opportunity is not directly proved, the facts proved should be such as that the plain and natural inference is, that there was no opportunity to inspect the article, as that the goods had not arrived at the place, or that if there, they were in such a condition as that they could not be inspected.
It follows that, in our opinion, the proof on this subject, was not sufficient, either on the first or second trial, to establish the fact that there was no opportunity of inspecting the flour; and therefore, not sufficient to establish the existence of a warranty on that ground. And this justifies, at once, the granting of the new trial, after the first verdict, and the instruction as in case of a nonsuit on the second trial.
It is, indeed, contended that the proof made by the defendant, on the first trial, that it was usual, at Louisville, to sell by the inspection at that place, was such evidence of a custom, as authorized the jury to find a warranty. But the evidence referred to, does not prove that, in sales of flour at Louisville, the vendor is understood to warrant it to stand the inspection at Louisville, though there be no express warranty, and no circumstance from which one would be implied at other places. The proof furnishes the means of expounding a warranty in a sale made at Louisville, but not the means of determining whether there was a warranty or not. On this question, therefore, the evidence was essentially the same on both trials; and on both trials, it was in *137 sufficient to authorize a jury to find, that the mere representation that the flour was superfine, had the effect of a contract or warranty. The case of Jones vs. Murray, 3 Monroe, 83, proves that a warranty is not to be inferred merely because the article sold was flour. Though the article was intended ultimately for consumption, it was sold in this instance, not for consumption, but for resale as merchandize.
Wherefore, the judgment is affimed.